IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JTH TAX, INC., dba
Liberty Tax Service,

        Plaintiff,
vs.                                                                       CIVIL NO.  11-MC-28 LH/LFG

TROY CLARK and SOUTHWEST
TAX STORES, LLC.,

        Defendants.

FREEDOM TAX STORES, LLC
and KIM GUTIERREZ,

        Miscellaneous.

**MEMORANDUM OPINION AND ORDER
ON PLAINTIFF'S MOTION TO COMPEL**

THIS MATTER is before the Court on Plaintiff's Motion to Compel Production and Inspection of Premises [Docs. 1 and 6]. The Court considered the motion, response [Doc. 3], and reply [Doc. 5], and determines that oral argument is not necessary.

JTH Tax, Inc., dba Liberty Tax Service ("Liberty") brought suit against Troy Clark and Southwest Tax Stores, LLC in the United States District Court for the Eastern District of Virginia. As part of Liberty's discovery process, it served a Fed. R. Civ. P. 45 subpoena on a non-party, Freedom Tax Stores, LLC ("Freedom Tax"), in care of its alleged sole member, Kim Gutierrez ("Gutierrez"). [Doc. 6 at 3-4].

Prior to the deadline for production, attorney Amanda D. Navarro, on behalf of Freedom Tax in Albuquerque, New Mexico corresponded via e-mail with Liberty's lawyers to request an extension of time ("Would you consider extending the deadline for the subpoenaed information, which is due

this Friday, April 29, 2011 . . . to Friday, May 6, 2011, when the remaining documents are due. . . and so that we can resolve the confidentiality issues." [Doc. 5, Exh. 1, attached e-mail of 4/27/11 from Amanda Navarro to Sada Sheldon])  Liberty agreed to the extension.  Neither the request for extension nor the grant of the request mentioned any deadline for filing objections, and Liberty did not condition the extension on Freedom Tax filing objections by April 29, 2011. [Id.; Ex. 1, attached e-mail of 4/28/11 from Sada Sheldon to Amanda Navarro].

Under such circumstances, it was reasonable for Freedom Tax and Gutierrez to believe that an extension of time to May 6, 2011 was granted to either produce the documents sought or, alternatively, to state proper objections.  On May 6, 2011, Freedom Tax and Gutierrez produced some documents and stated objections to others that were not produced. [*See generally*, Doc. 3].

## Present Motion

Liberty now argues that the failure to state objections by April 29, 2011 constituted a waiver of Freedom Tax's and Gutierrez's right to object. [Doc. 6 at 4].  The Court disagrees.  Had Liberty conditioned its grant of an extension on Freedom Tax and Gutierrez timely stating objections to the documents by April 29, Freedom Tax and Gutierrez would have been put on notice of the need to file objections by the original deadline or, alternatively, to seek relief before the Court.  The Court rejects the argument that Freedom Tax and Gutierrez's objections were waived or are untimely.

Before determining whether the objections asserted to the withheld documents should be sustained or overruled, the Court sets out its responsibilities in determining a discovery dispute of this nature.  The Court finds persuasive the discussion of "proportionality" by the Sedona Conference Working Group Abstract on Guidance for the Judiciary.  That report highlights the key consideration in determining the appropriate balance to strike between one party's request for information and the opposing party's objection to production.  *See*

http://www.thesedonaconference.org/wgs.

The cost of litigation in state and federal courts has become so expensive that litigants are being priced out of the process, and the chief culprit is the failure of courts and lawyers to control the costs of discovery.  American College of Trial Lawyers and Institute for the Advancement of American Legal System, Final Report on the Joint Project of the American College of Trial Lawyers Task Force on Discovery and the Institute for the Advancement of the American Legal System (March 11, 2009 at 2).

> The problem is not new, but is decades old.  Mensia v. Mayflower Textile Services, 253 F.R.D. 354, 360 (D. Md. 2008)(noting legislative history of the Civil Justice Reform Act of 1990 included reports of studies done in 1980 which found that discovery abuse was widespread).
>
> The irony is that the solution to this problem is, and has been for years, right at our fingertips, and is found in the cost-benefit proportionality factors of Fed. R. Civ. P. §§ 26(b)(2)(C) and 26(g)(1)(B)(iii).

Id.

Rule 26(b)(2)(C) provides that on motion or on its own, the court shall limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines:

> (I)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

The intent of the rule is simple. The Court must balance one party's right to obtain discovery against the burdens and risk of harm imposed on the other party, and in striking the balance, must look at a number of factors. For example, the Court considers the requester's need for this information, the relevance of the requested information to the litigation, the burden of producing the sought-after material, and the harm or difficulty which would be caused to a party seeking to protect the information. A court may deny the request altogether, limit the conditions, time, place or topics of discovery, or limit the manner in which the material will be disclosed. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir. 2000); *see also* Burka v. U.S. Dep't of HHS, 87 F.3d 508, 517 (D.C. Cir. 1996). This is all the more important in a situation, such as this, where the information requested is not even from a party to the lawsuit, but a third entity.

## Specific Requests and Objections

In its first request, item number 1, Liberty asks for Freedom Tax, a business competitor, to "List by customer name and primary SSN the dollars received by Freedom Tax from each customer for tax preparation services from January 1, 2010 through and including April 15, 2010." Freedom Tax objected citing privilege and confidentiality and arguing that the request elicits trade secret information that would be harmful. [Doc. 6; Ex. 4 at 1].

While asserting privilege, no privilege is identified other than trade secret information. Part of this objection is well-taken. The Restatement (First) of Torts, Sec. 757, comment 6, defines a trade secret as:

> any formula, pattern, device or compilation of information, which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not have or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, *or at list of customers*. [emphasis added].

It is clear, under this definition, that Freedom Tax's customer list is indeed a trade secret. *See* Telex Corp. v. I.B.M. Corp., 5510 F.2d 894, 928 (10th Cir. 1975)(accepting Restatement's definition of "trade secret" as set forth in Sect. 757, comment 6, but also noting that "generally just what constitutes a trade secret under the [Restatement's] definition is a question of fact for the trial court.").

After all, Liberty and Freedom Tax are business competitors, and a request for customer lists, even when disclosure to others is governed by terms of a protective order, does little to assuage the fear of customer poaching. There would be nothing to prevent Liberty, armed with Freedom Tax's customer lists, to target those customers by advertisement or direct solicitation to Freedom Tax's disadvantage.

The Court sustains the objection concerning Freedom Tax's customer lists, but will require Freedom Tax to provide Liberty with information concerning the amount of money earned in the three-month period between January 1, 2010 and April 15, 2010. Further, the Court requires Freedom Tax to disclose the gross amount of money it received for tax preparation services from January 1, 2010 through April 15, 2010. The Court will not require Freedom Tax to disclose customer Social Security identification numbers as requested. Indeed, disclosure of such information is prohibited by Judicial Conference policy and by the amended Federal Rules of Civil Procedure. *See, e.g.*, Rule 5.2. Thus, the Court sustains in part and overrules in part Freedom Tax's objection to tem number 1.

Request number 2 seeks personnel or payroll documents showing the name and address of all employees for Freedom Tax in 2010 and 2011. [Doc. 6; Ex. 4 at 2]. Disclosure of potential witnesses is relevant to the parties' claims and defenses under Fed. R. Civ. P. 26. Therefore, the Court will require Freedom Tax to disclose the names and last known addresses of employees in that

two-year period, but will not require production of personnel or payroll documents. The personnel and payroll documents bear no relevance to the claims in this case, and privacy interests of the employees outweigh Liberty's interests. Koch v. Koch, 203 F.3d at 1238; Burka v. U.S. Dep't of HHS, 87 F.3d at 517.

In request number 3, Liberty sought, "All customer lists, any document attached or electronic file that contains customer names, addresses or any customer information that was saved, copied, downloaded, maintained, transferred, or generated from any Liberty Tax Service office, including those owned by Troy Clark or Southwest Tax, LLC." Freedom Tax objected, contending again that this is a trade secret, and, to an extent, the Court agrees. [Doc. 6; Ex. 4 at 2].

As previously noted, the Court will not require Freedom Tax to disclose its own customer lists. However, to the extent that Liberty seeks a list of customers whose names were downloaded, maintained or transferred from Liberty's files or from Liberty's offices, the request is reasonable. Part of Liberty's claims in this case involve assertions that its own customers were stolen and improperly transferred to Freedom Tax. [*See* Doc. 6, Ex. 1 at 3.8]. The information about Liberty's own or former customers would not constitute part of Freedom Tax's trade secrets because Liberty knew of its own customers and merely seeks to ascertain if those Liberty customers are now Freedom Tax customers. Requiring Freedom Tax to provide a business competitor *all* customer lists, names, addresses, etc. puts Freedom Tax's business at risk. The Court sustains the objection, but requires Freedom Tax to disclose which, if any, of the names on its own lists were downloaded or transferred from Liberty's files.

In request number 4, Liberty seeks "All 'Release of Information' . . . forms signed by Freedom Tax customers authorizing Southwest Tax Stores d/b/a Liberty Tax Service, LLC to release a copy of their Federal and State Income Tax Returns." [Doc. 6; Ex. 4 at 2].

Freedom Tax objects, contending that the information sought is confidential and privileged. The Court disagrees. The very purpose of a release is to send the form to another person or entity, and, in doing so, there can be no expectancy of privacy in the release. It is important to note that Liberty does not seek the tax information obtained by the release forms, but only a copy of the generic Release of Information form. The Court overrules the objection and requires Freedom Tax to provide a copy of its Release of Information form.

In request number 5, Liberty seeks "All correspondence (including e-mail communication) with the landlords for all Freedom Tax office locations from September 1, 2010 through April 15, 2010." Thereafter, Liberty lists five separate addresses for Freedom Tax offices in Albuquerque, New Mexico. [Doc. 6; Ex. 1 at 2].

Landlord/tenant information between Freedom Tax and its landlords has little bearing on this case, and, to the extent any of this information is relevant, its relevancy would be outweighed by the burden, expense and difficulty securing that information. The objection would be sustained, but the Court notes that Freedom Tax advised that there are no communications with landlords for any of the listed locations.

In request number 6, Liberty sought copies of leases, sub-leases and assignments, and that information was provided. [Doc. 6; Ex. 4 at 3].

In request number 7, Liberty seeks "As to the time period November 1, 2010 to April 15, 2011, all cancelled checks for rent payments paid to you from a third party and/or paid by you for the offices used by Freedom Tax Stores . . . ." [Doc. 6; Ex. 4 at 3].

As before, the Court determines this information is not relevant, and to the extent it is marginally relevant, the burden, expense and difficulty securing this information outweighs any relevancy. Accordingly, the Court sustains the objection and does not require production. <u>Koch v.</u>

Koch, 203 F.3d at 1238; Burka v. U.S. Dep't of HHS, 87 F.3d at 517.

Similarly, in request number 8, Liberty seeks all telephone bills for telephone service in offices currently occupied by Freedom Tax at the Albuquerque, New Mexico locations listed in requests 5 through 9. Freedom Tax objects, claiming confidentiality and privilege in asserting that disclosure would reveal trade secret information. [Doc. 6; Ex. 4 at 4].

Indeed, disclosure of customers would violate Freedom Tax's right to pursue its own business interests and not have its customers solicited or poached by a competing business. Beyond customer lists, there is little relevance, if any, in disclosure of the many people who call in or who Freedom Tax calls. Thus, to the extent this information is marginally relevant, the Court determines that the expense, burden and difficult obtaining the information significantly outweighs any marginal relevancy, and the Court sustains the objection. Koch v. Koch, 203 F.3d at 1238; Burka v. U.S. Dep't of HHS, 87 F.3d at 517.

In request number 9, Liberty seeks copies of electric, water, and natural gas bills for the various Albuquerque, New Mexico Freedom Tax Stores. [Doc. 6; Ex. 4 at 4]. While the Court rejects the argument of confidentiality, it again determines that any marginal relevancy about how much Freedom Tax pays for utilities is outweighed by the difficulty, burden and expense of securing and producing the information. The Court sustains the objection. Koch v. Koch, 203 F.3d at 1238; Burka v. U.S. Dep't of HHS, 87 F.3d at 517.

In request number 10, Liberty sought employment contracts between Freedom Tax Stores and its employees, and that information was provided. [Doc. 6; Ex. 4 at 5]. No additional information is required.

In request number 11, Liberty seeks "As to the time period January 1, 2010 through April 15, 2011, copies of all employee schedules showing the name of each employee, their assigned task,

and the date and time scheduled to work." [Id.].

The Court finds that this information is not relevant to Liberty's claims, and to the extent it has any marginal relevancy, the burden, expense and difficulty of producing the information outweighs the relevancy. Koch v. Koch, 203 F.3d at 1238; Burka v. U.S. Dep't of HHS, 87 F.3d at 517. The Court sustains the objection.

In request number 12, Liberty asks for, "As to the time period January 1, 2010 through April 15, 2011, any documents, contracts, purchase and sale agreements, commission agreements, employment contract or other document(s) evidencing any financial interest, equity interest, past relationship or ongoing relationship between Freedom Tax Stores and Troy Clark, Ron Clark, or Kim Gutierrez." [Doc. 6; Ex. 4 at 5].

Freedom Tax objects, contending that it is bound to keep this information confidential. [Id.]. This information is at the heart of Liberty's case. The Court therefore overrules Freedom Tax objections and requires that it produce the information sought.

In request numbers 13, 14, 15, 16, and 17, various documents were sought. [Doc. 6; Ex. 4 at 6-7]. While Freedom Tax stated objections, it nonetheless produced the documents requested. No other production is required.

In request numbers 18 and 19, Liberty sought certain documents applicable to EPIN applications, and Freedom Tax responds that there are none to provide. [Doc. 6; Ex. 1 at 7]. The Court cannot require Freedom Tax to provide documents that do not exist. Cardenas v. Dorel Juvenile Group, 230 F.R.D. 611, 620 (D. Kan. 2005)("The court cannot compel the production of documents that do not exist or that are not in the possession, custody or control of a party.")

Request number 20 seeks a broad array of documents, including "original media format, of all advertisements, including flyers, brochures, mailings, emails, television commercials, radio

9

commercials or any other media, soliciting Lax [sic] preparation services by Freedom Tax Stores." Freedom Tax objections. [Doc. 6; Ex. 4 at 7].

The Court finds the request overly broad. To the extent there are copies of printed advertisements, flyers or brochures used for advertising, the Court orders that they be produced. It will not require copies of mailings or emails (as those may include customer addresses), nor will it require production of radio ads, commercials or other media advertisements.

In request numbers 21 and 22, Liberty aks for information concerning "invoices, purchase orders, mock ups and approvals" of ads and e-mails from vendors concerning placement of ads. Freedom Tax advises there are no documents it can provide. [Doc. 6; Ex. 4 at 7-8]. The Court cannot require an entity to produce documents that do not exist. *See* Cardenas, 230 F.R.D. at 620.

Request numbers 23, 24, 25, and 26 all deal with specific information concerning cash flow, revenues, expenses, bank statements, etc. Freedom Tax argues that much of this information is privileged and confidential and its production would result in disclosure of trade secret information. [Doc. 6; Ex. 4 at 8-9].

The Court agrees. This kind of detailed information from a financial competitor would be harmful to Freedom Tax, and to the extent financial information is available, it can best be obtained from a party to the litigation rather than a non-party.

In request number 27, Liberty sought Freedom Tax Stores "operations manual, employee manual, employee handbook," etc., and its employee manual for policies and procedures was provided. [Doc. 6; Ex. 4 at 9]. No further production is required.

Request number 28 seeks documentation to show the source of funding loans and start-up capital for Freedom Tax. This information is confidential, but to the extent that Troy Clark was the individual who provided funding, loans or start-up capital, the Court will require disclosure of

documents showing if Troy Clark was the source of funding, provided loans or start-up capital. The Court will not require disclosure of any other source of funding.

So, too, in request number 29, Liberty seeks information concerning e-mails by Freedom Tax sent to Troy Clark or received by Freedom Tax from Troy Clark. [Doc. 6; Ex. 4 at 7]. The request is too broad. There is no limit on the subject matter, dates or other qualifiers. However, to the extent that e-mails involve providing funding, loans or start-up capital, the Court will require production of those e-mails.

Finally, in request number 30, Liberty seeks contracts and agreements between Freedom Tax and Troy Clark, Ron Clark or Kim Gutierrez entered into between April 1, 2010 and April 15, 2011. [Doc. 6; Ex. 4 at 10]. As this information is directly relevant to the claims and defenses, the Court overrules the objection and, subject to a confidentiality agreement prohibiting use or disclosure of the information outside of the lawsuit, the Court orders that Freedom Tax provide the requested documents.

The information is to be produced by August 26, 2011.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge